**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse  40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

Docket Number(s): __25-679__    Caption [use short title]

Motion for: __Respondent's Motion To Dismiss In Part,__    GEORGI NATALICHVILI V. PAMELA BONDI

__Summarily Deny In Part, And Opposition To__

__Petitioner's Motion For A Stay Removal__

Set forth below precise, complete statement of relief sought:

__Respondent requests that this Court dismiss in part__

__and summarily deny in part the petition for review.__

__Respondent also request that the Motion For A Stay__

__of Removal be denied.__

_____

_____

MOVING PARTY: __Pamela Bondi__    OPPOSING PARTY: __Georgi Natalichvili__

☐ Plaintiff    ☐ Defendant

☐ Appellant/Petitioner    ☑ Appellee/Respondent

MOVING ATTORNEY: __Tracie. N. Jones__    OPPOSING ATTORNEY: __Michael Edward Piston__

[name of attorney, with firm, address, phone number and e-mail]

__U.S. Department of Justice__    __Piston & Carpetners__

__P.O. Box 878, Ben Franklin Stations__    __314 Town Center Drive__

__Washington, DC 20044__    __Troy, MI 48084__

Court- Judge/ Agency appealed from: __Board of Immigration Appeals__

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☐ Yes  ☑ No (explain):_____

FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUCTIONS PENDING APPEAL:

Has this request for relief been made below?  ☑ Yes ☑ No

Has this relief been previously sought in this court?  ☐ Yes ☐ No

Requested return date and explanation of emergency:  _____

_____

Opposing counsel's position on motion:
☐ Unopposed ☐ Opposed ☑ Don't Know

Does opposing counsel intend to file a response:
☐ Yes ☐ No ☑ Don't Know

Is the oral argument on motion requested?  ☐ Yes  ☑ No (requests for oral argument will not necessarily be granted)

Has the appeal argument date been set?  ☐ Yes  ☑ No  If yes, enter date:_____

Signature of Moving Attorney:

__/s/ Tracie N. Jones__  Date: __April 8, 2025__    Service : ☑ Electronic  ☐ Other [Attach proof of service]

Form T-1080 (rev. 10-23)

No. 25-679

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

GEORGI NATALICHVILI,

Petitioner,

v.

PAMELA BONDI, United States Attorney General,

Respondent.

_____

RESPONDENT'S MOTION TO DISMISS IN PART,
SUMMARILY DENY IN PART, AND OPPOSITION TO
PETITIONER'S MOTION FOR A STAY OF REMOVAL
Agency No. A073-040-405

_____

NOT DETAINED

_____

Respondent, United States Attorney General Pamela Bondi, respectfully

moves the Court to dismiss, in part, for lack of jurisdiction, and summarily deny in

part, the pending petition for review of the February 24, 2025 decision of the

Board of Immigration Appeals ("Board"). See Exhibit ("Ex.") A (Board's

February 24, 2025 Decision). In its decision, the Board denied Petitioner Georgi

Natalichvili's ("Natalichvili") fourth motion to reopen, which was filed over

twenty years out of time. See Ex. A. The Board further declined to exercise its

*sua sponte* authority to reopen Natalichvili's removal proceedings. See id. Inasmuch as Natalichvili challenges the Board's decision to decline to exercise its *sua sponte* reopening, the Court lacks jurisdiction over such challenges and should dismiss his petition. The portion of Natalichvili's petition for review that the Court retains jurisdiction over should be summarily denied because Natalichvili failed to demonstrate that his motion was not untimely and supernumerary or that he qualifies for an exception to the time and number limitations applicable to motions to reopen.

## **BACKGROUND**

Natalichvili is a native of the Soviet Union and a citizen of Georgia. See Ex. B (Immigration Judge's March 10, 1999 Decision). He was admitted into the United States on October 22, 1993, as a nonimmigrant student with authorization to remain in the United States until January 22, 1994. See id. Natalichvili filed an affirmative application for asylum and withholding of deportation with the former Immigration and Naturalization Services ("INS") on January 3, 1994. Id. He claimed that he suffered persecution and feared future persecution in Georgia based on his political opinion, specifically his membership in the Georgian Jewish Association, and after appearing for an interview with an asylum officer, Natalichvili's asylum application was referred to an immigration judge for further consideration. Id. On December 3, 1996, the former INS filed an Order to Show

2

Cause ("OSC"), charging Natalichvili with being removable pursuant to the former INA § 241(a)(1)(B). Id. Natalichvili admitted the factual allegations in the OSC and conceded removability. Id.

On March 10, 1999, after thorough recitation of the facts and applicable law, the immigration judge found Natalichvili removable as charged, denied his applications for asylum and withholding of deportation, and granted voluntary departure, in the alternative. See Ex. B. The immigration judge concluded that Natalichvili was not credible and failed to submit sufficient corroborating evidence.

On December 17, 2002, the Board summarily affirmed the immigration judge's decision without opinion. See Ex. C (Board's December 17, 2002 Decision).

On April 10, 2003, Natalichvili filed a motion to reopen with the Board. See Ex. D (Board's June 16, 2003 Decision). He argued that his proceedings should be reopened pursuant to Matter of Velarde-Pacheco, 23 I&N Dec. 253, 256 (BIA 2002), because he wished to seek adjustment of status through his marriage to a United States citizen. Id. Yet, he failed to submit an application for adjustment of status with his motion. Id. Noting that the Board issued its final order of removal on December 17, 2002, and that a timely motion to reopen was due by March 17, 2003, the Board held that Natalichvili's motion to reopen was

3

untimely.  Id.  The Board further concluded that Natalichvili's proceedings did not warrant reopening under Matter of Velarde-Pacheco.  Id.  The Board found that because Natalichvili remained in the United States after the scheduled date of voluntary departure, he was statutorily barred from applying for certain forms of discretionary relief, including adjustment of status.  Id. (citing Matter of Shaar, 21 I&N Dec. 541 (BIA 1996)).

More than fifteen years later, on September 24, 2018, Natalichvili filed a second motion to reopen with the Board seeking to adjust his status.  See Ex. E (Board's November 4, 2019 Decision).  The Board concluded that the motion to reopen was untimely and number barred and denied it as such.  Id.  Moreover, the Board declined to reopen pursuant to its *sua sponte* authority.  Id. (citing Matter of S-O-G- & F-D-B-, 27 I&N Dec. 463, 465-68 (A.G. 2018)).  The Board emphasized that "becoming eligible or potentially eligible for relief long after the entry of a final deportation order is not uncommon," and the Board held that there were not any "exceptional circumstances warranting *sua sponte* reopening."  Id. Natalichvili filed a petition for review of the Board's decision with this Court on November 8, 2019, and on November 21, 2019, Respondent filed a motion to dismiss and for summary disposition, which this Court granted on March 23, 2021. See Public Access to Court Electronic Records ("PACER"), Case Number

4

19-3724, docket entries #1, 16, & 67 (dated: November 8, 2019, November 21, 2019, & March 23, 2021).

On July 30, 2024, Natalichvili filed a third motion to reopen and terminate with the Board. See Ex. F (Board's November 4, 2024). In his motion, Natalichvili requested reopening and termination in order to seek adjustment of status based on his approved petition for an alien relative filed on his behalf by his United States citizen spouse. Id. Noting that the final order of removal was entered on December 17, 2022, and that the third motion was not filed until July 30, 2024, the Board denied Natalichvili's third motion as untimely and number-barred. Id. The Board concluded that Natalichvili did not raise any arguments that the motion fell within any exception to the temporal or number limitations on motions to reopen and that he failed to demonstrate an exceptional situation that would warrant *sua sponte* reopening. Id. The Board therefore denied Natalichvili's motion to reopen, and he did not file a petition for review of the Board's November 4, 2024 decision.

However, on November 13, 2024, Natalichvili filed a fourth motion titled a motion to terminate with the Board. See Ex. A. On February 24, 2025, the Board denied the motion. Id. Noting that the motion was "virtually identical" to the motion that was filed with the Board on July 30, 2024, the Board denied the motion for the same reasons that were outlined in the Board's November 4, 2025

5

decision.  Id.  The Board further rejected Natalichvili's claim that 8 C.F.R.

§ 1245.1(c)(8) (aliens who marry while in exclusion, deportation, or removal

proceedings are ineligible to adjust status) is applicable to his proceedings because

"the provision has no bearing on this case."  Id.  Accordingly, the Board denied the

motion.  Id.  Natalichvili filed the instant petition for review on March 24, 2025,

and the motion to stay removal on March 31, 2025, with this Court.  See PACER,

Case No. 25-679, docket entries 1 & 9 (dated March 24, 2025 and March 31,

2025).

## ARGUMENT

## I. THIS COURT LACKS JURISDICTION TO REVIEW THE BOARD'S DENIAL OF SUA SPONTE REOPENING

This Court's review of the agency's refusal to reopen proceedings *sua*

*sponte* is limited to "the narrow question of whether the [Board] misperceived the

legal background and thought, incorrectly, that a reopening would necessarily

fail.'"  Centurion v. Sessions, 860 F.3d 69, 75 (2d Cir. 2017) (citing Mahmood v.

Holder, 570 F.3d 466, 469 (2d Cir. 2009)).  Setting aside that Natalichvili does not

explicitly argue that the Board erred in declining to exercise its *sua sponte*

authority, the agency appropriately determined Natalichvili failed to demonstrate

an exceptional circumstance warranting reopening.  See Ex. E; see also Pet. Stay

Mtn. 1-21.  The Board has long advised that "untimely motions to reopen to pursue

an application for adjustment of status . . . will ordinarily be denied."  Matter of

6

Yauri, 25 I&N Dec. 103, 105 (BIA 2009); see Matter of G-D-, 22 I&N Dec. 1132, 1137 (BIA 1999). And the Board's *sua sponte* authority "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship." Matter of J-J-, 21 I&N Dec. 976, 984 (BIA 1997). Accordingly, the Board's decision not to exercise its *sua sponte* authority to reopen Natalichvili's proceedings is not subject to review by this Court. Centurion, 860 F.3d at 75.

## II. THE COURT SHOULD SUMMARILY DENY THE PETITION FOR REVIEW INSOFAR AS IT RELATES TO THE BOARD'S DENIAL OF NATALICHVILI'S MOTION AS TIME AND NUMBER BARRED

Under the INA, an alien may seek to reopen his proceedings once within ninety days of the final order of removal. See INA § 240(c)(7)(C), 8 U.S.C. § 1229a(c)(7)(C); 8 C.F.R. § 1003.2(c). Pursuant to the statute and the regulations, an alien is limited to one motion to reopen. INA § 240(c)(7), 8 U.S.C. § 1229a(c)(7); 8 C.F.R. § 1003.2(c). The time and numerical limitations on motions to reopen do not apply, however, in cases where the alien seeks reopening in order to apply (or re-apply) for asylum based on "changed country conditions arising in the country of nationality or the country to which removal has been ordered, if such evidence is material and was not available and would not have been discovered or presented at the previous proceeding." INA § 240(c)(7)(C)(ii), 8 U.S.C. § 1229a(c)(7)(C)(ii); 8 C.F.R. § 1003.2(c)(3)(ii)..

Here, there is no dispute that Natalichvili failed to file his latest motion to reopen within the prescribed time limit, or that – as the fourth such motion – it was supernumerary.[1] In Natalichvili's motion to reopen with the Board and in his pleadings to this Court, Natalichvili does not provide any reasons why the temporal and numerical bars for filing of motions to reopen should be excused. See Ex. A; Pet. Stay Mtn. 1-20. Rather, he argues that reopening is warranted because he is now eligible for adjustment of status, over twenty years after the Board issued its final order of removal, and because his removal would cause hardship to his United States citizen wife and their adult children. See id. As this Court has concluded, "eligibility for adjustment of status is not an exception to applicable time limitation on motions to reopen." Gashi v. Holder, 382 F. Appx. 21, 22 (2d Cir. 2010); see also Li v. Barr, 768 F. Appx. 50, 50 (BIA 2019) ("And there is no statutory or regulatory exception to the time limitation for motions to reopen to

---

[1] The Board issued its final order in Natalichvili's case on December 17, 2002. Ex. A. Therefore, Natalichvili had until March 17, 2003, to file a timely motion to reopen. See INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i). Natalichvili did not file his fourth motion to reopen, which is the basis for this petition for review, until November 13, 2024 . See Ex. A; Pet. Stay Mtn. 5. Thus, Natalichvili's motion to reopen was not timely filed with the Board. See Ex. A; INA § 240(c)(7)(C)(i), 8 U.S.C. § 1229a(c)(7)(C)(i); 8 C.F.R. § 1003.2(c)(2). Moreover, Natalichvili had previously filed three unsuccessful motions to reopen with the Board. See Exs. D, E, F. Thus, Natalichvili's motion to reopen was also number-barred. See Ex. A; INA § 240(c)(7)(A), 8 U.S.C. § 1229a(c)(7)(A); 8 C.F.R. § 1003.2(c)(2).

apply for adjustment of status."). Because Natalichvili did not present any exception to the time and number limitations on the motion to reopen, the Board did not abuse its discretion in denying Natalichvili's untimely fourth motion to reopen. Natalichvili's request for reopening is necessarily a request for *sua sponte* reopening, which as discussed above, the Court lacks jurisdiction to consider. See Zheng v. Holder, 377 F. Appx. 91, 93 (2d Cir. 2010) ("When an alien seeks reopening in an untimely motion on the basis that he is eligible to adjust his status, he is invoking the BIA's authority to reopen proceedings *sua sponte*.").

In his stay motion, Natalichvili argues that the Board erred in construing his motion as requesting reopening instead of termination, but his argument is unavailing. See Stay Mtn. 7-15. As the Board noted, his motion was "virtually identical" to his third motion to reopen that he filed with the Board on July 30, 2024. See Ex. A. The Board properly construed his motion as seeking reopening, where he submitted an identical motion and additional evidence in an effort to demonstrate that reopening was warranted. See Zhao v. U.S. Dep't of Justice, 265 F.3d 83, 90 (2d Cir. 2001) ("[A] motion to reopen asks that the proceedings be reopened for new evidence and a new decision, usually after an evidentiary hearing . . . . [P]etitioner's motion included new evidence and asked for relief because "proper documentation of a critical of the applicant's claim [was not] made.").

Natalichvili's argument that his long-closed proceedings need not be reopened in order for him to request termination of proceedings so that he may seek adjustment of status defies logic and finds no legal support. See Zheng, 377 F. Appx. at 93. That the regulations at 8 C.F.R. § 1245.1(c)(8)(ii) may define the period during which a noncitizen is considered to be in exclusion, deportation, or removal proceedings as terminating beyond the issuance of a final order of removal for purposes of determining whether that noncitizen is eligible to apply for adjustment of status, says nothing about whether reopening is needed to terminate proceeding, nor does it allude to the fact that the agency may terminate a final order of removal without reopening.[2] See 8 C.F.R. § 1245.1(c)(8). Natalichvili's unsupported and unpersuasive arguments are a meritless attempt to circumvent the temporal and numerical limitations on motions to reopen, which he exceeded. Therefore, Natalichvili's arguments that 8 C.F.R. § 1245.1(c)(8) are unpersuasive and should be rejected.

## III. NATALICHVILI'S MOTION FOR A STAY OF REMOVAL SHOULD BE DENIED

Summary disposition of Natalichvili's petition for review will render moot his request for a stay pending resolution of the petition. Cf. Narayan v. INS, 105

---

[2] Nor, for that matter, does 8 C.F.R. § 1003.1(m)(1) suggest that Natalichvili may avoid the statutory reopening requirements in order to seek termination to permit him to apply for adjustment of status. See Stay Mtn. 13-15.

F.3d 1335, 1335 (9th Cir. 1997) (denying as moot alien's motion for stay of deportation after finding that Court had no jurisdiction over petition for review). In any event, Natalichvili's request for a stay of removal fails on its merits. While the Courts of Appeals retain inherent authority to issue a stay of removal, the Supreme Court has recognized that "[a] stay is an 'intrusion into the ordinary processes of administration and judicial review.'" Nken v. Holder, 556 U.S. 418, 427 (2009) (internal quotations omitted). Moreover, it is an abuse of discretion for a court to grant a stay based solely on the importance or difficulty of the issues presented. See Munaf v. Geren, 553 U.S. 674, 690 (2008).

In Nken, the Court held that when deciding whether to grant an alien's motion for a stay of removal, the traditional four-factor test for granting a preliminary injunction applies. Nken, 556 U.S. at 427, 433-34. Those factors are: (1) whether the applicant for the stay "has made a strong showing that he is likely to succeed on the merits"; (2) whether the applicant will be "irreparably injured absent a stay"; (3) "whether issuance of the stay will substantially injure the other parties interested in the proceeding"; and (4) "where the public interest lies." Id. The Court should deny Natalichvili's request for a stay of removal because he has not satisfied the factors for a stay enumerated in Nken. The alien "bears the burden of showing that the circumstances justify an exercise of that discretion." Nken, 556 U.S. 434.

11

Natalichvili failed to meet the first factor of demonstrating likelihood of success on the merits. As argued above, Natalichvili failed demonstrate that this Court has jurisdiction over the denial to exercise its *sua sponte* authority to reopen proceedings or the Board erred in denying his untimely and number barred motion to reopen. Therefore, Natalichvili failed to show that a stay is warranted in his case.

Instead, Natalichvili argues that the Board erred because it construed his motion to terminate as a motion to reopen. Pet. Stay Mtn. 8-15. However, as stated above, Natalichvili's motion to terminate was "virtually identical" to his motion to reopen that he filed on July 30, 2024. Natalichvili does not present any meritorious arguments that his motion was not properly considered a motion to reopen. In sum, Natalichvili has failed to make a showing of a likelihood of success. Accordingly, the Court should deny the request for a stay of removal.

The final two Nken factors – the harm to opposing pasty and the public interest – merge when the Government is the opposing party. Nken, 556 U.S. at 435. "There is always a public interest in prompt execution of removal orders[.]" Id. at 436; id. at 427 ("[A] reviewing court may not . . . reflexively hold[] a final order in abeyance pending review. . . . The parties and the public [are] . . . generally entitled to the prompt execution of orders that the legislature has made final."); see also Sen. Jud. Committee Rep. No. 104-249 at 7, 1996

12

WL 180026 ("If the United States is to have an immigration policy that is both fair and effective, the law and the commitment of those with the duty to apply or enforce it must be clear . . . . Aliens who violate U.S. immigration law should be removed from this country as soon as possible."). The fact that the Government is "the respondent in every removal proceeding does not make the public interest in each individual one negligible, as some courts have concluded." Nken, 556 U.S. at 435. Indeed, "[t]he interest in prompt removal may be heightened by the circumstances [of a particular case]," where, for example, "the alien is particularly dangerous, or has substantially prolonged his stay by abusing the processes provided to him." Id. at 436.

A stay in this case would harm Respondent, as well as the public interest. "[T]he issuance of a stay would detrimentally impact the [Department of Homeland Security] by causing it to suspend execution of its deportation order[.]" Jenkins v. INS, 32 F.3d 11, 15 (2d Cir. 1994), overruled on other grounds by Aguirre v. INS, 79 F.3d 315, 316 (2d Cir. 1996). Congress has recognized the importance of this governmental interest. Lucacela v. Reno, 161 F.3d 1055, 1059 (7th Cir. 1998) (noting the "clear public interest (as expressed by Congress) in deporting illegal aliens without delay," and acknowledging that "Congress made it clear . . . that public policy has now shifted to enforcing deportation orders immediately"). Specifically, Congress has expressed its disapproval of the

13

unwarranted delays that sometimes exist in the effort to remove noncitizens promptly. "Existing procedures to deny entry to and to remove illegal aliens from the United States are cumbersome and duplicative. Removal of aliens who enter the United States illegally, even those who are ordered deported after a full due process hearing, is an all-too-rare event." H.R. Rep. No. 104-469(I), at 107 (1996), 1996 WL 168955. As a result, Congress has stated its desire that "[a]liens who violate U.S. immigration law should be removed from this country as soon as possible. Exceptions should be provided only in extraordinary cases specified in the statute and approved by the Attorney General." S. Rep. No. 104-249, at 7 (1996), 1996 WL 180026 (emphasis added); see Andreiu v. Ashcroft, 253 F.3d 477, 484 (9th Cir. 2001) (noting that "Congress did not intend for courts to grant stays of removal every time an alien files a petition for review").

Thus, Congress has determined that the public interest is served by the prompt departure of removable noncitizens. See Ofosu v. McElroy, 98 F.3d 694, 702 (2d Cir. 1996) ("There is a strong public interest in compliance with the immigration laws by aliens who seek the protection of those laws."); Sofinet v. INS, 188 F.3d 703, 708 (7th Cir. 1999) (recognizing "the public interest in the speedy and effective enforcement of the immigration laws as applied to aliens who have not made a satisfactory showing of entitlement to asylum"); see also Nken, 556 U.S. at 436. To merit an injunction interfering with this process, Natalichvili

must point to some factor to overcome the presumption that it is in the public's interest to remove her promptly. He has failed to do so. <u>See</u> Stay Mtn. 19-20. Therefore, the government's interest and the public interest outweigh any alleged harm to him.

In short, given Natalichvili's failure to show a likelihood of success on merits of the petition for review and the failure to offset the substantial injury a stay would have on the Government's interest in enforcing lawful orders of removal, the Court should deny the motion for a stay of removal.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Petition for Review for lack of jurisdiction, in part, summarily deny, in part, suspend the remainder of the briefing schedule until this motion has been adjudicated, and deny the motion to stay removal.

Respectfully submitted,

YAAKOV M. ROTH
Acting Assistant Attorney General
Civil Division

ANDREW N. O'MALLEY
Senior Litigation Counsel

/s/ Tracie N. Jones
TRACIE N. JONES
Attorney
Office of Immigration Litigation
Department of Justice, Civil Div.
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 305-2145

Dated: April 8, 2025        Attorneys for Respondent

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2025, I electronically filed the foregoing

"Respondent's Motion To In Part, Summarily Affirm In Part, And Opposition To

Petitioner's Motion For A Stay Of Removal," with the Clerk of the Court for the

United States Court of Appeals for the Second Circuit by using the appellate

ACMS system. Participants in the case who are registered with ACMS will be

served by ACMS system.


/s/ TRACIE N. JONES
TRACIE N. JONES, Attorney
Office of Immigration Litigation
Civil Division, Justice Department
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
Email: tracie.jones2@usdoj.gov
(202) 305-2145

# Exhibit A



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Piston, Michael
Immigration Law Office of Los Angeles, P
38-08 Union St  Suite 9A
Flushing  NY  11354

DHS/ICE Office of Chief Counsel - NYC
26 Federal Plaza, 11th Floor
New York NY 10278

Name: NATALICHVILI, GEORGI          A 073-040-405

Date of this Notice:    2/24/2025

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam:  Docket



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

NATALICHVILI, GEORGI
8206 3RD AVENUE
2ND FL
BROOKLYN NY 11209

DHS/ICE Office of Chief Counsel - NYC
26 Federal Plaza, 11th Floor
New York NY 10278

Name: NATALICHVILI, GEORGI          A 073-040-405

Date of this Notice:    2/24/2025

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being
provided to you as a courtesy. Your attorney or representative has been served with this decision
pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the
United States or affirms an Immigration Judge's decision ordering that you be removed, any
petition for review of the attached decision must be filed with and received by the appropriate
court of appeals within 30 days of the date of the decision.

Sincerely,

John Seiler
Acting Chief Clerk

Enclosure

Userteam:  Docket

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Georgi NATALICHVILI, A073-040-405

Respondent

**FILED**
Feb 24, 2025

ON BEHALF OF RESPONDENT: Michael Piston, Esquire

IN DEPORTATION PROCEEDINGS
On Motion from a Decision of the Board of Immigration Appeals

Before: Liebowitz, Appellate Immigration Judge

LIEBOWITZ, Appellate Immigration Judge

This matter was last before the Board on November 4, 2024, when we denied the respondent's third motion to reopen removal proceedings that became administratively final on December 17, 2002. On November 13, 2024, the respondent filed the instant "motion to terminate." The motion, to which the Department of Homeland Security ("DHS") has not responded, will be denied.

The instant motion is virtually identical to the respondent's last motion (*Compare* Respondent's Mot. at 1-8 & Attached Exhibits, Nov. 13, 2024, *with* Respondent's Mot. at 1-10 & Attached Exhibits, July 30, 2024). We deny this motion for the reasons stated in our November 4, 2024, order.

We only separately note that the respondent's continued reliance on 8 C.F.R. § 1245.1(c)(8) is unavailing (Respondent's Mot. at 7-8, Nov. 13, 2024). As noted previously, that provision has no bearing on this case (Bd. at n.1, Nov. 4, 2024).

Accordingly, the following order will be entered.

ORDER: The motion is denied.

# Exhibit B

KAM

UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
New York, New York

File No.:   A 73 040 405                    March 10, 1999

In the Matter of            )
                            )
GEORGI NATALICHVILI         )  IN DEPORTATION PROCEEDINGS
                            )
            Respondent      )

CHARGE:         Section 241(a)(1)(B) of the Immigration and
                Nationality Act - remained longer than
                permitted.

APPLICATIONS:   Request for political asylum, withholding of
                deportation and voluntary departure under
                Sections 208, 243(h)(3) and 244(e) of the
                Immigration and Nationality Act.

ON BEHALF OF RESPONDENT:        ON BEHALF OF SERVICE:

Nirmala Jurakhan, Esquire       Victor Yee, Esquire
225 Broadway, Suite 307         Assistant District Counsel
New York, New York 10007        New York District

<u>ORAL DECISION OF THE IMMIGRATION JUDGE</u>

The respondent is a native of the U.S.S.R. and

citizen of Georgia who entered the United States at New York,

New York, on October 22, 1993.  At that time the respondent

was admitted as a nonimmigrant student with authorization to

remain in the United States for a temporary period not to

exceed January 22, 1994.  On December 3, 1996, an Order to

Show Cause was issued alleging that the respondent is

deportable pursuant to Section 241(a)(1)(B) of the Immigration

1

KAM

and Nationality Act (hereafter "the Act") as a person who has remained in the United States longer than permitted. The respondent through counsel has admitted the factual allegations and conceded the charge of deportability as contained in the Order to Show Cause. On the basis of these admissions and concession, the Court finds that the charge of deportability has been established by clear, unequivocal and convincing evidence. The respondent has declined to designate a country for removal. The Court hereby directs Georgia.

In lieu of deportation, the respondent has applied for political asylum and withholding of deportation, and in the alternative, voluntary departure pursuant to Sections 208, 241(b)(3) and 244(e) of the Act. On January 3, 1994, the respondent filed an application for political asylum (form I-589) with the Immigration and Naturalization Service [Exhibit 2]. The respondent's application for political asylum has been referred to this Court for adjudication and is considered as an application for political asylum as well as withholding of deportation pursuant to 8 C.F.R. 208.3(b).

In compliance with the applicable regulations on August 1, 1997, this Court forwarded a copy of the respondent's asylum application to the Department of State for an updated response. It is in evidence as Exhibit 3.1. The response from the Department of State is dated September 2, 1997 [Exhibit 3.1]. The Court also admitted into evidence a

A 73 040 405                    2                    March 10, 1999

KAM

number of other background materials submitted by the respondent [Exhibit 3.2] and the Country Reports on Human Rights Practices for the year 1997 [Exhibit 3.3]. The response from the Department of State while taken into consideration are not binding in proceedings before an Immigration Judge. The Judge also considers the credibility of the information an individual presents in requests for asylum and determines any discretionary aspects of that individual's case which may exist.

The respondent bears the evidentiary burdens of proof and persuasion in an applications for political asylum or withholding of deportation. An individual who is seeking withholding of deportation from any country must show that such individual's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group or political opinion. In order to make this showing, the respondent must establish a clear probability of persecution on account of one of the enumerated grounds. This clear probability standard requires a showing that it is more likely than not that the respondent would be subject to persecution. Under the Refugee Act of 1980, the granting of withholding of deportation is mandatory once statutory eligibility for this relief has been established, and the respondent is not otherwise statutorily ineligible for this relief. Political asylum on the other hand is a

A 73 040 405                    3                  March 10, 1999

KAM

discretionary form of relief.

An individual who is seeking such a discretionary grant of political asylum must demonstrate status as a refugee as defined by Section 101(a)(42)(A) of the Act. That definition includes the requirement that the respondent demonstrate an unwillingness or inability to return to his country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion. The requirement is met by a showing of circumstances under which a reasonable person would fear persecution.

In determining whether the respondent is eligible for political asylum, his subjective mental state must be considered against the background of circumstances prevailing in his home country. The objective reasonableness of respondent's fear can be based on what has happened to others similarly situated as reported in the current Department of State's Country Reports on Human Rights Practices or other reliable sources. In some cases, the only available evidence of an individual's subjective fear may be that individual's own testimony. It can suffice where the testimony is believable, consistent and sufficiently detailed to provide a plausible and coherent account for the basis of respondent's fears. This does not mean, however, that introducing supporting evidence is merely at the respondent's option.

A 73 040 405                    4                March 10, 1999

KAM

Generally, such evidence must be presented when available. This is particularly true when the basis of an individual's asylum claim is based on an allegation of general conditions in that person's country of origin. In such cases, corroborative background evidence may well be essential.

Finally, not just any fear of persecution will suffice to sustain the respondent's burden. The objectively reasonable possibility of persecution on account of a ground specified in Section 101(a)(42)(A) of the Act and the respondent's subjectively reasonable fear of experiencing that persecution both must be established.

In addition to establishing eligibility for a grant of asylum, an applicant for asylum has the burden of establishing that a favorable exercise of discretion is warranted. To meet that burden, the respondent should present evidence of any positive factors that the respondent believes will support the favorable exercise of discretion. Assuming eligibility for asylum is established, another factor to be considered in the exercise of discretion is whether the respondent has relatives legally in the United States or other personal ties to this country which was the motivation to seek asylum here rather than elsewhere.

The respondent's claim for political asylum is based on his allegation that he has been the victim of past persecution and/or that he holds a well-founded fear of

A 73 040 405                     5                     March 10, 1999

KAM

persecution if returned to Georgia on account of his nationality, religion, membership in a particular social group or political opinion. The Court will later discuss more specifically the different grounds on which the respondent bases his claim for political asylum and the reasons why the Court finds that the respondent really has failed to establish by a preponderance of the evidence that he actually belongs to any particular group or nationality or religion or that he holds any political opinion which would render him vulnerable to persecution, but that will be discussed later.

In his testimony before this Court, the respondent first testified that he attended a medical institute in Georgia from 1986 to 1991. Later he changed this to say that he actually attended the institute until 1992. The respondent testified that his father is of Russian nationality and his mother is of Jewish nationality. The respondent testified that he considers himself "more of a Jew" because of how his mother brought him up. The respondent claims that while attending the medical institute the first year or year and a half, that he didn't have many problems but that after he started engaging in political activities, it became very difficult.

The respondent claims in his testimony that in 1988, he joined a group that he later described as the "Georgian Jewish Association". The respondent described this group as

A 73 040 405                6                March 10, 1999

KAM

one that fights for human rights. The respondent was asked specifically to describe his activities that he performed for this group. The respondent was very vague and it required several questions to get some testimony regarding this. The respondent first testified that the group would set up a place where participants could listen to the radio broadcasts of the Voice of America that was prohibited by the government. Then the respondent added that the group also promoted human rights. The respondent testified that when a dissident would be detained, the group would boycott and demonstrate before the police station to obtain the release of the individual. Thereafter, respondent testified that his own individual involvement involved obtaining literature and translating it into Georgian and then reading it before a large group. The respondent testified that the literature that he would obtain would be critical of the communists. The respondent also testified that he would distribute literature to let the people know.

The respondent claims that the organization that he belonged to was known by the general population. The respondent testified that he also participated in boycotts and in demonstrations. The respondent testified also that the demonstrations protested higher taxes and that it also protested the development of the economy.

The respondent testified that on direct examination

A 73 040 405                    7                 March 10, 1999

KAM

that he was detained twice in Georgia. When the respondent proceeded to describe his first detention, he referred to it as an arrest. When his own lawyer reminded him that a moment ago he had testified he had never been arrested, the respondent changed it to say that, well, it was just a detention. by that he meant he was just held a few hours. The respondent claims that the first time he was detained was in summer of 1989 and that he was held for two or three hours while biographical information was obtained and then he was released. Respondent claims that at the time he was arrested or detained, he had been demonstrating to get a friend released. The respondent claims that he was officially detained for disturbing the peace.

Respondent testified that three months after that, he was again detained while handing out leaflets at May Square. The respondent testified that he was charged with littering and that the leaflets discussed anti-government, anti-state matters and also discussed taxation and corruption by the government. The respondent now added that the organization that he belonged to, the Georgian Jewish Association, also promoted the separation of church and state.

The respondent testified that he left Georgia on October 23, 1993, because of his political activism and because he was not in agreement with the government in power. The respondent testified that in August of 1992, he tried to

A 73 040 405                    8                    March 10, 1999

KAM

publish what he first described as a letter. Then he testified that it was an article that he drafted criticizing the government. The respondent first testified that the article focused on the government now moving toward democracy. In answer to a question by his lawyer as to whether he had any opinions regarding the judicial system of Georgia, then the respondent added that the article criticized the fact that there is no jury system in Georgia, that the judge exclusively decides a case and can sentence an individual for 20 years or to life.

The respondent claims that he tried to publish this article in three or more papers but is not sure how many. The respondent claims that on August 19, 1992, when he was returning from the medical institute, he was approached by unknown individuals and he was severely beaten. The respondent claims that the attackers did not say anything but he assumes that this had to do with his unsuccessful attempts to get his article published. The respondent claims that he was left unconscious from the attack and he was taken to a hospital where he remained for over one week.

Respondent testified that because of this incident, he stopped collaborating with the Georgian Jewish Association and decided to leave Georgia. The respondent testified that he believed that he would be more valuable to the organization if he left the country and came to the United States with a

A 73 040 405          9          March 10, 1999

KAM

student visa. Since the respondent entered the United States, he claims that he's still involved with the organization in Georgia, that he sent materials there. The respondent claims that in 1994, he sent a brochure or booklet that he obtained from a female friend that belongs to a Georgian Jewish organization in the United States and that he sent this to a friend in Georgia. The respondent claims that his friend was arrested, beaten up, lost one eye in the incident and that his friend mentioned the respondent's name. As a result of this, the respondent claims his mother was taken for interrogation and his mother was told that the respondent was a traitor and that he would be arrested. Right after that during direct examination, the respondent testified that his parents were taken to the police precinct and that his mother then also received phone calls. Right after that, however, he testified that it was only his mother that was taken to the police station and that she was not beaten.

The respondent testified that if he would return to Georgia, he believes that he would be killed. He claims that his parents still continue to receive threats directed to the respondent. The respondent claims that because of all this, he recently had an anxiety attack in the United States and required treatment at the emergency room of the hospital.

The respondent on cross-examination testified that he attends the synagogue in Brighton Beach here in the United

A 73 040 405                     10              March 10, 1999

KAM

States.  He was asked why he does not have a letter to confirm his attendance at the synagogue, and the respondent claims that he knows the name of the rabbi, the rabbi knows him and provided no reason why he hasn't submitted a letter to corroborate his attendance to the synagogue.  The respondent also testified that he attended a synagogue in Georgia that was located in the old Tbilisi neighborhood where the Jews lived and that it had no name.

On cross-examination, respondent was asked to explain or to state the last Jewish holiday that passed.  The respondent's first started to say that it was Passover.  Then changed his mind to say it was Hanukkah.  The respondent was questioned regarding another more recent Jewish holiday.  The respondent testified that he doesn't know about this holiday.  Respondent was also asked to explain the significance of Passover.  The respondent made reference to special dietary restrictions that took place on the holiday.  Then after some hesitation, he claimed that in remembrance of God, that he couldn't explain it and provided no other information regarding Passover.  The respondent claims that while in Georgia, he attended the synagogue but in the United States he only attends on major holidays.  The respondent testified on direct examination that he has not joined any Jewish organizations in the United States.

On cross-examination, the respondent further

A 73 040 405                11                March 10, 1999

KAM

testified that he doesn't have any copies of the article that he attempted to publish in Georgia, that he's asked for it, but that he has not received it.

The respondent was asked why there is no mention in either of his asylum applications that he ever belonged to any Jewish organization in Georgia. The respondent explained that the first application for political asylum was not prepared professionally, but with respect to the more current asylum application, the respondent explained that the computers in the United States have all the information.

The respondent was asked why neither application for political asylum mentions these two alleged detentions. The respondent again offered the explanation that the application was prepared by non-professional help. Then when he was asked regarding the second asylum application, the respondent stated that at the asylum interview he was not given a chance to explain. When the respondent was reminded he was being asked regarding the second asylum application, now the respondent said that he only had to fit certain information into the asylum application. Respondent was asked whether he reviewed this asylum application and he indicated that he did. He was asked why didn't he then answer the question specifically asked whether the respondent has ever been detained in the affirmative. The respondent testified that he just missed it.

The respondent testified that with respect to the

A 73 040 405                    12                    March 10, 1999

KAM

article that he was unable to publish in Georgia, this article had nothing to do with religion.

Respondent was asked regarding the leader of the Jewish organization. The respondent gave one name and then when the respondent was asked regarding the name of Oshschwedi which is the author of one of the letters that he submitted and a member of parliament which is marked for identification only [Exhibit 6 for ID]. The respondent offered the information that this individual was a co-president of the organization. When the respondent was asked the first name of this individual he indicated that it was David. The respondent was asked to explain why the letter is signed by someone with the first name of Simon. The respondent said that he could have forgotten this because five or six years have passed.

The respondent was asked whether his father had ever gone to the police station and the respondent testified that he had not, that only his mother and that his mother was detained only or questioned by the police and went to the police station one time. The respondent was asked to explain why his asylum application, that is the current one prepared by his current attorneys, states that his mother and father had been taken to the police station for interrogation. The respondent gave non-responsive answers, something to the extent that he had an anxiety attack about a month ago. The

A 73 040 405                    13                    March 10, 1999

KAM

Court's not sure whether that has anything to do with the inconsistency regarding as to who had gone to the police station. The respondent claims that he thought that it possibly related to an incident that happened a month ago. That again was not responsive to the question. So the respondent has offered no explanation for this.

The respondent denies under oath that he told the asylum officer that he left Georgia because of the civil war. He does, however, admit that he told the asylum officer that he was not very religious. The respondent claims that at the asylum interview he was not given much of a chance to explain anything and attributes this to the fact that he did not tell the asylum officer about these two detentions. The respondent claims now that he left Georgia because he could not express his thoughts freely and because he was beaten up because of this. The respondent was asked why he waited one year after the attack to leave Georgia. The respondent explained that it is difficult getting a visa to come to the United States.

On questioning by the Court, the respondent testified that he celebrated Passover in Georgia at least 20 times but never in the United States. The respondent was asked to explain the significance of Yom Kippur. The respondent while he described that this holiday takes 10 days and that something happens in the last two days, the respondent was only able to very generally say that it is a

A 73 040 405                    14                    March 10, 1999

KAM

time that is dedicated to God.

Respondent testified that in the United States he has been employed as a jeweler for the last two years. He first indicated that he had no family in the United States. Then he testified that his has a brother who lives with the respondent and who came to the United States one month after the respondent came to the United States and is a lawful permanent resident on the basis of a diversity visa lottery.

After having carefully considered the evidence presented, the Court finds that the respondent has failed to meet his burden of proof with respect to establishing that he has been the victim of past persecution and/or that he holds a well-founded fear of persecution if returned to Georgia. First and foremost, the Court should comment that while the respondent was given a very fair and generous and ample opportunity to timely present documentary evidence to corroborate his claim, for unexplained reasons, the respondent has not seen fit to timely file any documentary evidence to the Court which could be admitted into evidence and given any probative weight. The Court notes that as far back as September of 1998, six months ago, the respondent and his current attorneys were made aware of the deficiencies in certain translations submitted by the respondent with respect to documents which had been proffered and marked only for identification but not having been admitted into evidence.

A 73 040 405                    15                    March 10, 1999

KAM

The respondent, however, has done very little if nothing to cure these defects and only very belatedly attempted to present some translations today which did not comport to the requirements because they lack a certificate of translation. The respondent's attorney has proffered a claim that the respondent in all this time was not able to obtain a qualified translator. The Court finds this explanation incredible. The Court notes there are a number of very extensive and very competent organizations in New York City that provide competent interpreter in many languages including Georgian. The Court notes also that the United Nations Office in New York City and there are many resources that the respondent had access to to get a qualified translator but apparently chose not to tell his own lawyer that he was having any difficulties obtaining a translator until this hearing today.

The Court will say that even if the documents that the respondent has proffered would have been admitted into evidence, the Court would still find the respondent did not establish that he's eligible for political asylum. This is because the Court has carefully considered the respondent's testimony and must find that this testimony is not credible. In fact, the Court very suspects that the respondent has testified falsely before this Court and/or in the alternative, that he has submitted information in his political asylum application which is false.

A 73 040 405                16                March 10, 1999

KAM

The Court notes that the respondent has filed two applications for political asylum in this case. The first one prepared by unknown individuals which the respondent claims were not professionals [Exhibit 2]. The second application was prepared by the respondent's current counsel [Exhibit 2.1]. The respondent initially was asked to explain why there were any differences between his second and first application and filed an affidavit [Exhibit 2.2]. However, that affidavit merely recites an incident that happened at the time of the asylum interview where the respondent claims that the asylum officer falsely accused the respondent of lying. That affidavit states absolutely nothing as to how the first application was prepared. The only thing we know about the first application is that it wasn't professional prepared, but we know nothing about the circumstances under which is was prepared.

At any rate, with respect to the second application prepared by his current attorney, the respondent's attorney had previously represented and this was also confirmed by the respondent's testimony during cross-examination, that the application had been reviewed with the respondent. The respondent's attorney had represented twice that the application had been reviewed and the respondent is fully aware of the contents and everything was true and correct. Well, the Court notes some very serious discrepancies between

A 73 040 405                    17                    March 10, 1999

KAM

the respondent's testified and the information provided in the
asylum application. First, the Court notes that nowhere in
either asylum application does it state that the respondent
ever belonged to any organizations in Georgia. More
specifically, that he never belonged to the Georgian Jewish
Association. The respondent did not offer any credible
explanation why this was not included in his application and
particularly why this was not corrected when the respondent
allegedly reviewed the asylum application with the respondent.
The Court notes that there is one question specifically asked
in both applications which asks whether the respondent or any
member of his family ever belonged or had been associated with
any organization or groups in the respondent's home country
and it explains that it could be a political party, a student
group, union, a religious organization, military or
paramilitary group, civil patrol, guerrilla organization,
ethnic group, human rights group or the press. Well, in spite
of that question being specifically asked and despite the
respondent's attorney's and the respondent's representation
that the application had been reviewed, that question, no. 3
in the second asylum application merely states that the
respondent's brother was associated formerly in an
organization that is not named, but says absolutely nothing
about the respondent. The Court must find that under the
circumstances, the respondent's claim in is testimony today

A 73 040 405                18                March 10, 1999

KAM

that he was an active member of this organization is simply not credible and that his testimony cannot be perceived to be truthful. The Court can overlook minor inconsistencies such as dates, specific dates of events that happened long ago, but where the respondent belonged to such an organization, that would be a critical part of his claim, the fact that the first time we hear about this is during direct examination today to the surprise of the Court and to the respondent's own lawyer. Clearly this suggests that the respondent's testimony in this regard is not credible.

The Court also notes that the respondent in his testimony today for the first time also indicated he had been detained twice because of his political activities in Georgia. Again neither asylum application offers or mentions anything about the respondent ever having been detained. With respect to the first application, again we have the respondent's assertion that it was not professionally prepared. This doesn't explain why such a critical incident would have been omitted since this is a question that is contained in both applications. So critically the respondent has really not offered any credible explanation why these alleged detentions were not in his current application prepared by his current lawyer and reviewed by the respondent.

Similarly, the respondent in his testimony today claims that he was involved in boycotts and demonstration.

A 73 040 405                    19                    March 10, 1999

KAM

None of that is mentioned in the asylum application, nor has the respondent offered any explanation for that.

The respondent claims that the organization that he belonged to in Georgia was known to the general population. The respondent has presented no materials to corroborate that such an organization exists. There's also the respondent's testimony that he decided to leave Georgia because he thought that he could do more good for the organization if he left that country. Well, in the United States, however, by his own testimony there is an organization of Georgian Jews in the United States. For unexplained reasons, he never even joined that organization, apparently has been associated with that group. Now clearly that by itself would seem to, that is the fact that the respondent when he has complete freedom to participate in such groups and alleging that that is the reason why he left Georgia and came to the United States, the fact that he never joined such a group in the United States when he readily could have done it greatly undermines the respondent's claim that that is the reason he left Georgia.

The respondent also for the first time in his current asylum application and his testimony today claims that while in the United States, he sent back some materials which apparently led to the arrest and beating of a friend and that this friend then revealed that the respondent had sent this literature to Georgia and for this reason, his parents or his

A 73 040 405                    20                    March 10, 1999

KAM

mother was taken to the police station for interrogation and
the police indicated that they would arrest the respondent,
that he was a traitor. Well, needless to say the respondent
in the over three and a half years that this incident
allegedly happened in 1994, has not sought to produce any
letters, affidavits from anyone that would have personal
knowledge of those events and which are the basis for the
respondent's claim. The respondent did not offer any
explanation why he hasn't submitted any affidavit. In fact,
on cross-examination he said that he didn't know about this,
that he could do that. Surprisingly, the respondent's brother
has been in the United States almost as long as the respondent
has. No information has been proffered as to why his
testimony was not offered or in the alternative, an affidavit
or sworn statement by the respondent's brother who lives with
the respondent in his home in New York City. Now such lack of
diligence in trying to document or corroborate the
respondent's claim with documentation or evidence which would
be readily available, in fact, as close as the respondent's
apartment in Brooklyn, to some extent the very inaction of the
respondent starts undermining his other claim that he really
fears that his life would be in jeopardy if returned to
Georgia. The Court cannot conceive that an individual who
alleges to be in circumstances which he would likely be
threatened in his home country, would be totally so

KAM

disinterested in his own case where specific problems with translations are pointed out to him. He's had six months to do this and does absolutely nothing plus he doesn't even elicit an affidavit from his own brother who is here in the United States and who would perceivably have knowledge of some of the events the respondent testified to and which are the underlying basis for his claim.

The Court notes that even with respect to the alleged incidents that resulted from the respondent's sending some literature to Georgia in 1994 appeared to be less than credible. The respondent claims in his testimony that only his mother was taken to the police station and this happened only one time. In his asylum application, the one prepared by his current attorney, however, the respondent states specifically in answer to question no. 4, Part C, that his mother and father were interrogated by the KGB at the police station and another answer to question no. 5 of also Part C, the respondent again refers to his parents in the plural of being interrogated because of the documents that he sent. Again, the respondent claims that this application was reviewed and his lawyer also made the same representation. No explanation was offered why that was not corrected. The respondent just said that he missed this.

The Court has very carefully considered the evidence presented and the Court is also very doubtful that the

A 73 040 405                    22                    March 10, 1999

KAM

respondent has even established that he is in fact Jewish or that he would be in any way identified as being Jewish in Georgia. The Court notes that one of the documents proffered by the respondent, his birth certificate shows that his mother's nationality is Georgian as also his father. So while the respondent claims that his mother is Jewish because of his grandmother, really there would be no way for the respondent to be identified as a Jew. Now the respondent tries to claim that he would be identified as a Jew because he alleges to have been raised as a Jew by his mother and that particularly he attended on numerous occasions the synagogue in Georgia. Well, the Court cannot believe that, that the respondent is a person who attended a synagogue any number of times because the respondent appears to be very unfamiliar with some of the very basic tenants of the Jewish religion, but particularly the Court cannot conceive that a person who allegedly celebrated the Jewish holiday of Passover in Georgia at least 20 times would not know the significance of that holiday. That just simply is not believable. It is evident that the respondent if it is true that his grandmother was Jewish, that he's simply trying to use this as a basis of establishing a claim but the Court cannot find from the evidence presented by the respondent that he has in fact established that he is Jewish or that he would identified as Jew in Georgia. The Court further notes that the respondent claims to have

A 73 040 405                    23                    March 10, 1999

KAM

attended a synagogue in New York and that the rabbi personally knows the respondent. He hasn't explained why in all this time he hasn't obtained a letter from the rabbi confirming in fact that he attends the synagogue.

Therefore, the Court must find that the respondent has even failed to establish that he is in fact Jewish, that in Georgia he would be identified either as a person who has the nationality of Jewish or that he practices or is a religious person who would be identified because of his religious activities as a Jew.

Because of all the reasons stated, the Court finds the respondent has failed to meet his burden of proof with respect to establishing that he has been a victim of past persecution and/or that he holds a well-founded fear of persecution if returned to Georgia. Accordingly, his application for political asylum must be denied. Because the respondent has failed to establish statutory eligibility for political asylum, it is not necessary to decide whether he deserves this relief in the exercise of discretion. Furthermore, because the respondent has failed to establish statutory eligibility for political asylum, it follows that he has failed to meet the higher standard of proof necessary to establish eligibility for withholding of deportation pursuant to Section 243(h) of the Act.

In the alternative, the respondent has applied for

A 73 040 405                    24                  March 10, 1999

KAM

the relief of voluntary departure under Section 244(e) of the Act. The Court is very reluctant to grant this relief in the exercise of discretion because the Court very strongly suspects that the respondent has either testified falsely before this Court and/or that the respondent has submitted applications for political asylum with false information. The Court would consider these to be very serious matters, very strong adverse factors that the respondent then would be required to show countervailing equities to overcome these strong adverse factors. Now the Court notes that the respondent claims that he has a brother who is a lawful permanent resident of the United States. However, the respondent has not been forthcoming with any documentary evidence that his brother is a lawful permanent resident. The respondent claims that he has no other family ties in this country and normally this would be sufficient to deny the respondent's application for voluntary departure in the exercise of discretion. However, the Court will give the respondent very reluctantly the benefit of the doubt and will give the respondent a very limited period of voluntary departure.

The following orders are hereby entered.

<u>ORDER</u>

IT IS ORDERED that the respondent's applications for political asylum and for withholding of deportation pursuant

A 73 040 405                          25                    March 10, 1999

KAM

to Sections 208 and 243(h) of the Immigration and Nationality Act be and the same are hereby denied.

IT IS ORDERED that in lieu of deportation, the respondent is granted voluntary departure at no expense to the Government on or before April 9, 1999, or any extension beyond such date as may be granted by the District Director of the Immigration and Naturalization Service and under whatever conditions the District Director may direct.

IT IS FURTHER ORDERED that in the event the respondent fails to depart when and as required the privilege to depart voluntarily shall be revoked and the respondent shall thereupon be deported from the United States to Georgia on the charge contained in the Order to Show Cause.

GABRIEL C. VIDELA
Immigration Judge

A 73 040 405                    26                    March 10, 1999

# Exhibit C



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

**Perillie, Patrice, Esquire**
**450 Seventh Avenue**
**New York, NY 10123-0004**

**Office of the District Counsel/NYC**
**26 Federal Plaza, Room 1130**
**New York, NY 10278**

**Name: NATALICHVILI, GEORGI**

**A73-040-405**

**Date of this notice: 12/17/2002**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Jeffrey Fratter
Chief Clerk

Enclosure

Panel Members:
SCHMIDT, PAUL W.

**U.S. Department of Justice**
Executive Office for Immigration Review

Decision of the Board of Immigration Appeals

Falls Church, Virginia 22041

===================================================================

File:   A73-040-405 - New York

Date:

In re:  NATALICHVILI, GEORGI

IN DEPORTATION PROCEEDINGS

DEC 17 2002

APPEAL

ON BEHALF OF RESPONDENT: Perillie, Patrice, Esquire

ORDER:

PER CURIAM. The Board affirms, without opinion, the results of the decision below. The decision below is, therefore, the final agency determination. *See* 8 C.F.R. § 3.1(e)(4).

FURTHER ORDER: Pursuant to the Immigration Judge's order and in accordance with our decision in *Matter of Chouliaris*, 16 I&N Dec. 168 (BIA 1977), the alien is permitted to depart from the United States voluntarily within 30 days from the date of this order or any extension beyond that time as may be granted by the district director, and in the event of failure to depart, the alien shall be deported as provided in the Immigration Judge's order.

FOR THE BOARD

# Exhibit D



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

---

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Ciprian, Muriel, Esq.
505 8th Avenue
Suite 12A03
New York, NY 10018-0000

Office of the District Counsel/NY
26 Federal Plaza, Room 1130
New York, NY 10278

Name: NATALICHVILI, GEORGI                          A73-040-405

Date of this notice: 06/16/2003

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Jeffrey Fratter
Chief Clerk

Enclosure

Panel Members:
    GRANT, EDWARD R.

**U.S. Department of Justice**                    Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A73 040 405 - New York                    Date:  JUN 16 2003

In re:  GEORGI NATALICHVILI

IN DEPORTATION PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:   Muriel Ciprian, Esquire

ORDER:

PER CURIAM. Respondent in this matter asks that we reopen these proceedings so that he can apply for adjustment of status pursuant to his marriage to a United States citizen, though we note that no application has been included with the instant motion. *See* 8 C.F.R. § 1003.2(c)(1). In accordance with our ruling in *Matter of Velarde-Pacheco*, 23 I&N Dec. 253, 256 (BIA 2002) (". . . a properly filed motion to reopen may be granted, in the exercise of discretion, to provide an alien an opportunity to pursue an application for adjustment where the following factors are present: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by *Matter of Shaar*, 21 I&N Dec. 541 (BIA 1996), or on any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition solely on *Matter of Arthur, supra*."[1] ). The motion to reopen will be denied.

Unlike the motion in *Matter of Velarde-Pacheco, supra,* the motion to reopen here has been filed out of time. The Board issued the final administrative order in these proceedings on December 17, 2002. Pursuant to 8 C.F.R. § 1003.2(c)(2) (with certain exceptions not relevant here), a motion to reopen in any case previously the subject of a final decision must be filed no later than 90 days after the date of that decision. In the instant case, a motion to reopen would have been due on or before March 17, 2003. The record reflects, however, that the Board did not receive the motion until April 10, 2003. The motion to reopen was therefore filed out of time.[2]

---

[1] *See Matter of Arthur*, 20 I&N Dec. 475 (BIA 1992).

[2] Respondent states he has never received a copy of the Board's December 17, 2002, order denying his appeal and granting him a period of 30 days within which to voluntarily depart the United States. A review of the record reveals that the Board mailed a copy of its order to respondent's then counsel of record at the address last provided on a Form EOIR 27 - Notice of Appeal to Board of Immigration Appeals of Decision of Immigration Judge, and that it was not returned by the postal

A73 040 405

Respondent's motion is also barred by *Matter of Shaar*, 21 I&N Dec. 541 (BIA 1996). Pursuant to section 240B(d) of the Act, 8 U.S.C. § 1229c(d), an alien who fails to depart following a grant of voluntary departure, and who has been provided written notice of the consequences of remaining in the United States, is statutorily barred from applying for certain forms of discretionary relief. We find that the respondent is barred from applying for adjustment of status by section 240B(d) of the Immigration and Nationality Act, 8 U.S.C. § 1229c(d). An alien who remains in the United States after the scheduled date of departure is statutorily ineligible for discretionary relief. Therefore, because the respondent has remained in the United States after the scheduled date of departure, the respondent is now statutorily ineligible for the relief sought.

Accordingly, the motion to reopen is denied.

FOR THE BOARD

service as undeliverable.

2

# Exhibit E

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Roisman, Monica
Law Office of Monica Roisman, P.A.
2050 Coral Way, Suite 206
Miami, FL 33145

DHS/ICE Office of Chief Counsel - NYC
26 Federal Plaza, 11th Floor
New York, NY 10278

Name: NATALICHVILI, GEORGI

A 073-040-405

Date of this notice: 11/4/2019

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Guendelsberger, John

Sharrif
Userteam: Docket

**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

NATALICHVILI, GEORGI
8201 4TH AVENUE,
APT 1H
BROOKLYN, NY 11209-0000

**DHS/ICE Office of Chief Counsel - NYC**
**26 Federal Plaza, 11th Floor**
**New York, NY 10278**

Name: NATALICHVILI, GEORGI          A 073-040-405

**Date of this notice: 11/4/2019**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Panel Members:
Guendelsberger, John

Sh_ri_h
Userteam: Do_c_t

**U.S. Department of Justice**                          Decision of the Board of Immigration Appeals
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A073-040-405 – New York, NY                    Date:        **NOV - 4 2019**

In re: Georgi NATALICHVILI

IN DEPORTATION PROCEEDINGS

MOTION

ON BEHALF OF RESPONDENT:   Monica Roisman, Esquire

APPLICATION:   Reopening


The Board entered a final administrative decision in this matter on December 17, 2002. On June 16, 2003, we denied the respondent's first motion to reopen these proceedings. The respondent has now filed a second motion to reopen. The motion is accompanied by a motion for a stay of deportation, which we denied in an order issued on January 16, 2019. The motion to reopen, which remains pending, will be denied.

The respondent seeks reopening and either termination of these proceedings or a remand to the Immigration Court to allow him to pursue adjustment of status. The instant motion is untimely and number-barred, and will be denied as such. *See* 8 C.F.R. § 1003.2(c)(2).

We also decline to reopen proceedings pursuant to our limited discretionary sua sponte authority under 8 C.F.R. § 1003.2(a). *See Matter of G-D-*, 22 I&N Dec. 1132, 1133-34 (BIA 1999) (stating that "as a general matter, we invoke our sua sponte authority sparingly, treating it not as a general remedy for any hardships created by enforcement of time and number limits in the motions regulations, but as an extraordinary remedy reserved for truly exceptional situations"). In so concluding, we note that reopening and termination of these proceedings is not appropriate. *See Matter of S-O-G- & F-D-B-*, 27 I&N Dec. at 463, 465-68 (A.G. 2018) (explaining the agency's limited authority to terminate proceedings in a narrow set of circumstances that are not present here). We further note that becoming eligible or potentially eligible for relief long after the entry of a final deportation order is not uncommon. For these and other reasons, we do not find exceptional circumstances warranting sua sponte reopening.

Accordingly, the following order will be entered.

ORDER: The motion to reopen is denied.


FOR THE BOARD

# Exhibit F



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*



*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Piston, Michael E.
**Michael E. Piston, Attorney at Law**
**38-08 Union St Suite 9A**
**Flushing NY 11354**

**DHS/ICE Office of Chief Counsel - NYC**
**26 Federal Plaza, 11th Floor**
**New York NY 10278**

**Name: NATALICHVILI, GEORGI**          A 073-040-405

**Date of this Notice:   11/4/2024**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Userteam: Docket





**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

| | |
|---|---|
| **NATALICHVILI, GEORGI**<br>**8206 3RD AVENUE**<br>**2ND FL**<br>**BROOKLYN NY 11209** | **DHS/ICE Office of Chief Counsel - NYC**<br>**26 Federal Plaza, 11th Floor**<br>**New York NY 10278** |

**Name: NATALICHVILI, GEORGI**       **A 073-040-405**

**Date of this Notice:   11/4/2024**

Enclosed is a copy of the Board's decision in the above-referenced case. This copy is being provided to you as a courtesy. Your attorney or representative has been served with this decision pursuant to 8 C.F.R. § 1292.5(a). If the attached decision orders that you be removed from the United States or affirms an Immigration Judge's decision ordering that you be removed, any petition for review of the attached decision must be filed with and received by the appropriate court of appeals within 30 days of the date of the decision.

Sincerely,

*Donna Carr*

Donna Carr
Chief Clerk

Enclosure

Userteam:  Docket

**NOT FOR PUBLICATION**

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

MATTER OF:

Georgi NATALICHVILI, A073-040-405

Respondent

<div style="border:1px solid">

**FILED**
Nov 04, 2024

</div>

ON BEHALF OF RESPONDENT: Michael E. Piston, Esquire

IN DEPORTATION PROCEEDINGS
On Motion from a Decision of the Board of Immigration Appeals

Before: Liebowitz, Appellate Immigration Judge

LIEBOWITZ, Appellate Immigration Judge

This case was last before the Board on November 4, 2019, when we denied the respondent's motion to reopen. On July 30, 2024, the respondent filed the instant motion to reopen and terminate.[1] The motion will be denied.

The respondent seeks reopening and termination of the proceedings to pursue adjustment of status based on an approved immediate relative visa petition filed on his behalf by his United States citizen spouse.

The respondent's motion to reopen is untimely and number-barred. The final administrative order in these proceedings was entered by the Board on December 17, 2002. Generally, a motion to reopen in any case previously the subject of a final administrative order of deportation removal must be filed no later than 90 days after the date of that decision, and only one may be filed. 8 C.F.R. § 1003.2(c)(2). The present motion was filed on July 30, 2024, well beyond the filing deadline. In addition, the respondent has filed a prior motion to reopen.

Further, the respondent does not argue that the instant motion falls within an exception to the time limitation, as a motion to reopen to apply for asylum or withholding of deportation based on materially changed circumstances in the country of removal. 8 C.F.R. § 1003.2(c)(3)(ii).

---

[1] Although the respondent argues, inter alia, that administratively final proceedings can be terminated by the Board without first reopening, he has not proffered any persuasive legal or regulatory support for that argument. We note that the regulation cited by the respondent is not applicable to that argument or to the instant case, as it relates to when a noncitizen would be deemed to have married someone while proceedings were pending and the corollary, heightened evidentiary burden of proof that would then apply. *See* 8 C.F.R. § 1245.1(c)(8).

A073-040-405

Moreover, the circumstances of this case do not present any exceptional situation that would warrant our sua sponte reopening. *See Matter of J-J-*, 21 I&N Dec. 976 (BIA 1997) (stating that the power to sua sponte reopen proceedings is reserved for "exceptional situations" and "is not meant to be used as a general cure for filing defects or to otherwise circumvent the regulations, where enforcing them might result in hardship"); *see also Matter of H-Y-Z-*, 28 I&N Dec. 156, 161 (BIA 2020) (stating that equities acquired after a final order of removal generally do not constitute exceptional circumstances warranting discretionary reopening).

We note that nothing in this decision prohibits the respondent from seeking prosecutorial discretion from the Department of Homeland Security, nor does it prevent the parties from filing a joint motion, which is exempt from the time and number limitations. *See* 8 C.F.R. § 1003.2(c)(3)(iii).

Accordingly, the following order will be entered.

ORDER: The motion is denied.